**Richard P. ROSENBAUM and Joann Rosenbaum, Plaintiffs-Appellants,**

v.

**FIRST AMERICAN NATIONAL BANK OF NASHVILLE, Defendant-Appellee,**

and

**Murry Guard, Inc., Earl Swensson Associates, Inc., and Kevin Tucker & Associates, P.C., Defendants.**

Court of Appeals of Tennessee, Middle Section at Nashville.

Feb. 28, 1985.

Application for Permission to Appeal Denied by Supreme Court May 13, 1985.

874

M. Taylor Harris, Jr., Nashville, for plaintiffs-appellants.

W.W. McNeilly, Jr., John B. Carlson, Nashville, for defendant-appellee.

## OPINION

LEWIS, Judge.

Following a jury verdict for plaintiff Richard P. Rosenbaum of $75,000 and plaintiff Joann Rosenbaum of $15,000 against defendant-appellee First American National Bank of Nashville (Bank), the Trial Judge sustained the Bank's motion to credit the judgments for sums paid to plaintiffs by defendant Murray Guard, Inc. (Murray) and defendant Earl Swensson Associates (ESA) to settle plaintiffs' claims against Murray and ESA.

The plaintiffs contend that the Trial Judge erred in allowing credit because Murray and ESA were not joint tortfeasors with the Bank. They insist that the Bank, by its own admissions, has precluded its right to credit pursuant to Tenn.Code Ann. § 29–11–105.

The pertinent facts are as follows:

The Bank relocated its Belle Meade branch to the former Moon Drug Store location in the Belle Meade Theater Shopping Center in Nashville, Tennessee, in the fall of 1981. In the parking lot behind the shopping center, the Bank erected a separate drive-through building with a night depository. ESA was the Bank's architect on the Belle Meade project.

During the night of August 5, 1982, plaintiff Richard Rosenbaum, Jr. was robbed and shot while making a night deposit at the Bank's Belle Meade drive-through facility.

In their complaint filed on May 4, 1983, the plaintiffs alleged that a prior robbery had occurred on June 2, 1982, and that the Bank had failed to take "reasonable remedial action to protect its customers." The complaint also alleged that the Bank, instead of taking "reasonable remedial measures . . . chose instead to employ Murray Guard to provide guards in the general area of the night depository." The complaint alleged that this action was a "wholly inadequate response to the known risk of grievous bodily harm which was present" and that these inadequate measures increased the risk of injury to customers of the Bank because the customers would be lulled into a false sense of security. The complaint further alleged that "[t]he Bank was further negligent in failing to properly supervise the manner in which Murray Guard was carrying out its duties, and/or in failing to discover the careless, negligent and improper manner in which Murray Guard was carrying out its duties."

In regard to plaintiffs' claim against Murray, the complaint alleged:

Murray Guard failed to properly train its employees to carry out their duties in a reasonable and competent manner. The employees of Murray Guard should have been trained to park their vehicles in an exposed location with a full view of the area, rather than next to the area where it was known that robbers could easily conceal themselves. They should further have been trained not to leave their vehicles, wander unarmed around the area, converse with third parties, sit on the roof or in the back of a vehicle, and listen to the radio or watch television. They should further have been

trained in reasonable emergency procedures to follow in the event that a robbery did occur on premises being guarded by them. They should have been trained to render first aid and to properly deal with and assist victims. Murray Guard was therefore negligent in failing to train its employees, in failing properly to supervise them, and in allowing them to perform their duties in the manner described herein. Murray Guard was also negligent in employing persons who would be careless, inattentive and negligent in the conduct of their employment.

Subsequently, plaintiffs amended their complaint and sued ESA and Kevin Tucker and Associates. The complaint alleged that ESA and Tucker and Associates, who had been employed by the Bank to do certain landscaping, were negligent in performing their duties and that such negligence was the direct and proximate cause of the injuries which plaintiffs sustained.

The Bank's answer to the complaint denied that it had been negligent and denied that any conduct attributable to it had been the proximate cause of any injuries sustained by plaintiffs.

Murray Guard, in its answer to the complaint, denied that it had been negligent and further alleged that the armed robbers who shot plaintiff Richard Rosenbaum were the direct and proximate cause of plaintiffs' injuries.

ESA and Tucker answered, denying that they had been guilty of any conduct which was the proximate cause of plaintiffs' injuries.

Prior to trial, plaintiffs non-suited as to Tucker and Associates.

The case was set for trial on May 21, 1984. On May 13, 1984, the plaintiffs settled their claims against both Murray and ESA. The claim against Murray was settled for $20,000, and plaintiffs executed and delivered to Murray a release discharging Murray only for any claims or demands arising out of the August 5, 1982

incident. This release expressly allocated $10,000 to plaintiff Richard Rosenbaum's claim and $10,000 to plaintiff Joann Rosenbaum's claim. Plaintiffs' claim against ESA was settled for $4,000 and plaintiffs executed releases discharging ESA from any and all claims. The $4,000 was equally divided between plaintiff Richard Rosenbaum and Joann Rosenbaum.

The case came on for trial against the Bank only. The jury found the Bank liable to plaintiffs and awarded a judgment of $75,000 to Richard Rosenbaum and $15,000 to plaintiff Joann Rosenbaum.

Thereafter, the Bank filed a motion to alter and amend the judgment so as to be allowed credit for the sums paid to plaintiffs by ESA and Murray. The Trial Judge allowed the credits and reduced the judgment for plaintiff Richard Rosenbaum to $63,000 and the judgment for plaintiff Joann Rosenbaum to $3,000.

Tennessee Code Annotated § 29–11–105 provides as follows:

> *Effect of release or covenant not to sue upon liability of other tort-feasors.* —(a) When a release or covenant not to sue or not to enforce judgment is given in good faith to one (1) of two (2) or more persons liable in tort for the same injury or the same wrongful death:
>
> (1) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and
>
> (2) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.
>
> (b) No evidence of a release or covenant not to sue received by another tort-feasor or payment therefor may be introduced by a defendant at the trial of an action by a claimant for injury or wrong-

ful death, but may be introduced upon motion after judgment to reduce a judgment by the amount stipulated by the release or the covenant or by the amount of the consideration paid for it, whichever is greater.

It is plaintiffs' insistence that § 29–11–105 is not applicable in this case because the Bank testified that Murray had no protection or guard duties whatsoever and that the presence of Murray was solely to keep people attending a "block-buster movie" at the Belle Meade Theater from parking their cars in such a manner as to block the night deposit drive-through lane and access to the "anytime banker." They contend that had Murray been a defendant at trial, the Bank's testimony would have established that Murray owed no duty of protection to the plaintiff because Murray was not hired for that purpose. It is their insistence that there is no presumption of tort liability insofar as Murray is concerned in this case and, therefore, the Bank is not entitled to the $20,000 reduction of the judgments predicated on the amount Murray paid for the release. They insist that the Bank is judicially estopped to contend that Murray is liable in tort to Rosenbaum since the Bank, both in its answer and in its request for admissions, denied Rosenbaum's allegations of negligence against Murray.

The plaintiffs also insist that the Bank is not entitled to credit for the amount paid by ESA because the Bank in its response to discovery "suggested that ESA had no discretion in the matter of the location of the night depository" and that the Bank had "directed" ESA to design the night depository into the parking lot building. They insist that their "confidence in [their] theory against ESA was weakened by First American's disclosure" and that because of this disclosure, they accepted a settlement of $4,000 from ESA.

While it is of little consequence because of our holding in this matter, we find nothing in the record before us to support this insistence.

Both plaintiffs and the Bank cite *Yett v. Smoky Mountain Aviation, Inc.*, 555 S.W.2d 867 (Tenn.App.1977), as the only Tennessee case which has touched upon the issue before us. In *Yett*, the plaintiff sued Cessna Aircraft Company, Teledyne Continental Motors, Inc., Borg-Warner Corporation, and Smoky Mountain Aviation, Inc. in a personal injury action. After the trial commenced, plaintiff entered into an agreement whereby Borge-Warner and Teledyne agreed or obligated themselves to make payment of $35,000 to the plaintiff. A non-suit was taken as to Borg-Warner and Teledyne. *Id.* at 868. The case then went to the jury against defendants Cessna and Smoky Mountain Aviation. The jury exonerated Cessna and returned a verdict against Smoky Mountain for $100,000. Smoky Mountain then by proper motion sought a reduction in the $100,000 judgment of the $35,000 paid by Borg-Warner and Teledyne. The trial judge denied the motion, stating:

So, the Court denies the motion to reduce the judgment because the liability was not joint and several; because the payment was made by a party held not responsible by implication; and, because in basic fairness and justice, the plaintiff as between these parties should be entitled to this amount. Defendant should not benefit from the plaintiff's good fortune in reaching an accommodation with a potential defendant.

*Id.* On appeal, Special Judge Inman, writing for the Court, stated:

We are constrained to disagree with the learned trial judge that reduction is inappropriate absent a relationship of joint tort-feasorship. . . .

The record reveals only that appellee settled her claim against Teledyne and Borg-Warner for $35,000.00, and dismissed her action as to them. Payment had not been made at the time the motion to reduce was heard, and consequently no release or covenant had then been executed. The stratagem is neither sub-

tle nor commendable; we have no difficulty in holding that the agreed payment by Teledyne and Borg-Warner was not a mere gratuity, as alleged, but was made by "one liable in tort". To hold otherwise would be sheer sophistry. If the ploy adopted by appellee were to prevail the statute would be rendered utterly nugatory. Appellee alleged specific acts of negligence on the part of Teledyne and Borg-Warner, and proceeded to trial against them. The exoneration of Cessna doubtless permits appellee to indulge in the speculation that Teledyne and Borg-Warner would also have been exonerated; but this argument is irrelevant. Perhaps Teledyne and Borg-Warner, in secure hindsight, should not have settled, but appellee cannot now have dual advantage by delaying execution and delivery of a release or covenant to the statutory detriment of appellant.

*Id.* at 869.

The Court went on to state:

While our Supreme Court has not specifically addressed the precise issue, some direction will be found in *Bible and Godwin Construction Company v. Faener Corporation,* 504 S.W.2d 370 (Tenn.1974) and *Continental Insurance Company v. Knoxville,* 488 S.W.2d 50 (Tenn.1972), wherein indemnity was ordered or reduction allowed in analogous situations. Possibly the clearest articulation is found in *Layne v. United States,* 460 F.2d 409 (9th Cir.1972):

"Layne misapprehends the purpose and effect of § 4 of the Uniform Act. While § 4 changed the common law in one respect (i.e., by providing that release of one joint tortfeasor does not automatically release the other joint tort-feasors), it retained that part of the common law rule embodying the sound public policy of permitting a plaintiff to receive only the amount of his adjudged damages and no more, regardless of the source of the recovery. Since the principle is that there

can be but one satisfaction for the same injury, whether or not the released party is in fact jointly liable with the defendant against whom a judgment is rendered is not relevant. In either case, to prevent recovery by plaintiff of more than his legitimate damages, 'the amount paid for the release or covenant not to sue must reduce *pro tanto* the injured person's judgment against another.' (Citing cases.)

To require the United States to prove at trial that the released party was in fact a joint tort-feasor before § 4 of the Uniform Act can operate to cause a *pro tanto* reduction in the award equal to the amount recovered in the settlement would effectively thwart the major policy justifications for encouraging extra-judicial settlements—the disposition of claims without litigation, and the reduction and simplification of the issues requiring judicial determination. We do not think the language or intent of the Uniform Act requires such a result."

*Id.*

Plaintiffs attempt to distinguish *Yett* from this case. However, we see very little, if any, difference. The plaintiff in *Yett* argued that defendants Teledyne and Borg-Warner were in the same position liability wise as was Cessna and that when the jury determined Cessna not guilty of negligence, it necessarily followed that Teledyne and Borg-Warner were not. They argued, therefore, that Teledyne and Borg-Warner were not "liable in tort" and that any amounts paid by Borg-Warner and Teledyne to plaintiff could not be credited against the $100,000 judgment. This argument was adopted by the trial judge but rejected by this Court.

In *Levi v. Montgomery,* 120 N.W.2d 383 (N.D.1963), the plaintiff sued his employer and Grand Forks Implementing Company, a dealer who had sold the tractor to plaintiff's employer, for injuries sustained while

operating the tractor on his employer's farm. Plaintiff settled his claim against Grand Forks for $15,000. Plaintiff when went to trial against his employer and recovered a judgment of $30,000. The trial court denied the employer's motion for a reduction in the judgment on the ground that payment of the $15,000 by Grand Forks was a voluntary payment and that Grand Forks was "not liable in tort to the plaintiff." The North Dakota Supreme Court, in construing the North Dakota statute which is identical to Tenn.Code Ann. § 29-11-105(a)(1), held that the judgment must be reduced by the amount paid to the plaintiff by Grand Forks. The Court stated as follows:

> Thus the question at issue between the parties is determined by the pleadings. Even though the plaintiff now contends that he, in fact, had no cause of action in tort against one of the defendants, the court will consider the issues as framed by the pleadings. Where the plaintiff charges several defendants with tort, and one of the defendants buys its way out of the suit and is given a release and covenant not to sue, the court will not go into the question of liability of such defendant. The test in such case is: Was the defendant sued as a tortfeasor? If so, any liability of the remaining defendants to the plaintiff must be reduced by the amount paid for such release or covenant not to sue by such defendant. The question of actual liability in tort of any of the defendants so discharged by release and covenant not to sue is wholly immaterial. The release and covenant not to sue discharges such defendant from any possible liability for any tort of which such defendant possibly might have been guilty. Whether he was, in fact, guilty of tort is immaterial where such defendant does not desire to try out the question and is willing to pay consideration and in good faith secures such release and covenant not to sue.
>
> Surely the plaintiff cannot now complain if the amount of his verdict recovered against the defendant Montgomery is reduced by the amount paid to him by the defendant implement company on such covenant not to sue. The plaintiff still will receive the full amount which the jury found he was entitled to receive for all of his injuries. The trial court submitted the case to the jury under instructions which required the jury to find the defendant [employer] guilty for all of the damages suffered by the plaintiff. In this case, the verdict of the jury found the plaintiff's full damages to be the sum of $30,000.00. However, he has already been paid $15,000.00 for those injuries by the defendant Grand Forks Implement Company under the covenant not to sue. Surely the plaintiff cannot now argue that the defendant implement company made a gift to him and that, on receipt of such gift and release from the suit of the defendant implement company, the remaining defendant should be liable for the full amount of plaintiff's damages as determined by the jury without any right of contribution from the other defendant. To so hold would allow the plaintiff to recover in full for all damages suffered by him and retain the sum of $15,000.00 paid for the covenant not to sue, which sum would be in addition to and beyond any damages which he, in fact, had suffered.

120 N.W.2d at 388, 389.

■ In this case we do not think that plaintiffs Rosenbaum would seriously contend that Murray and ESA, out of the goodness of their hearts, made a gift of $24,000 to them. Murray and ESA paid $24,000 to the plaintiffs in order to "buy their peace." This $24,000 was paid because plaintiffs had sued Murray and ESA and alleged that both Murray's and ESA's negligence was a direct and proximate cause of the injuries which plaintiffs received as a result of the robbery and shooting of plaintiff Richard Rosenbaum.

■ To hold as plaintiffs would have us do would in most every case require a

hearing as to the liability of the defendant to whom a covenant not to sue or release had been given. One of the purposes of Tenn.Code Ann. § 29–11–101 *et seq.* is to encourage extra-judicial settlements and promote judicial economy. The statute would be thwarted if we should adopt plaintiffs' theory.

We are of the opinion that the test in a case such as this is whether the settling defendant was sued as a tortfeasor. If so, whether the defendant discharged by release or covenant not to sue is liable to the plaintiffs is immaterial. A judgment against the remaining defendant or defendants will be reduced by the amount paid by the defendant or defendants to whom the release or covenant not to sue is given.

The judgment of the Trial Court is affirmed with costs of this appeal assessed against the plaintiffs and the cause remanded to the Trial Court for the collection of costs and any further necessary proceedings.

CANTRELL and KOCH, JJ., concur.