Evelyn A. TUTTON, Plaintiff-Appellant,

v.

Dr. R.E. PATTERSON,
Defendant-Appellee

Supreme Court of Tennessee,
at Jackson.

July 28, 1986.

Frank J. Glankler, John I. Houseal, Randall B. Womack, Memphis, for plaintiff-appellant.

Jerry E. Mitchell, James E. Conley, Jr., Memphis, for defendant-appellee.

## OPINION

DROWOTA, Justice.

Plaintiff, Evelyn A. Tutton, filed this medical malpractice action against Dr. R.E. Patterson and Saint Joseph Hospital, in

which she alleged that the Defendants were negligent in leaving a laparotomy sponge in her abdomen during a caesarean delivery of her child and in failing, after surgery, to discover the existence of the sponge. Plaintiff settled her claim against Saint Joseph Hospital on the eve of trial for $40,000. A jury returned a verdict in favor of Ms. Tutton against Dr. Patterson in the amount of $78,498. The trial court denied Dr. Patterson's motion for a credit in the amount of the Saint Joseph Hospital settlement against the judgment rendered in this cause.

This case was tried under three theories of liability. The first theory was that the Defendant was vicariously liable for the acts and omissions of the hospital staff. The second theory was that the Defendant himself was guilty of negligence in failing to locate or detect the sponge during his inspection of the wound prior to closing the incision. The third theory of liability was that Defendant negligently failed to diagnose and treat the Plaintiff post-operatively.

We granted review in order to consider the jury instruction in regard to the vicarious liability count and the failure of the trial court to credit the Saint Joseph Hospital settlement against the judgment rendered against the Defendant, Dr. Patterson.

*Facts*

In September, 1983, when this case was tried, Plaintiff was 22 years old. Ms. Tutton became pregnant in 1978 and came under the care of Dr. Patterson, an obstetrician and gynecologist practicing in Memphis. On May 4, 1979, Ms. Tutton was admitted to Saint Joseph Hospital in Memphis to give birth. During the course of Ms. Tutton's labor, Dr. Patterson determined that it was necessary to terminate the pregnancy by performing a caesarean section. The operation was performed on May 5, 1979, and resulted in the birth of a baby boy. During the operation, Dr. Patterson was assisted by a scrub nurse and a "circulator," among others, who were em-

ployees of Saint Joseph Hospital. The scrub nurse testified that prior to the operation she and the "circulator" counted the laparotomy sponges which were unpacked and laid out for use during the operation. Additional sponges which were unpacked during the course of the operation were also counted. Laparotomy sponges are used during the performance of a caesarean to soak up blood and to pack or hold back the patient's other organs. Laparotomy sponges have a loop attached which is supposed to hang outside the patient's body when the sponge is inside the body. Frequently, an instrument is hooked to the loop hanging outside the patient's body so that the operation site will not be sewn closed while a sponge is inside the patient. Sponge counts are conducted by the nurses during the operation. Prior to closing the abdomenal cavity, while operating on Ms. Tutton, the nurses told Dr. Patterson that the sponge count was correct.

It was stipulated that not all of the sponges were removed from Ms. Tutton's abdomenal cavity during the May 5, 1979, operation. One laparotomy sponge which measured 35 centimeters by 32.5 centimeters was unknowingly left in Ms. Tutton's abdomen. Ms. Tutton remained in the hospital until her discharge on May 12, 1979. During her stay in the hospital, she experienced pain in her left side, and nausea that was accompanied by spiking temperatures. On the morning of her discharge, she had a temperature of 101.2°.

Ms. Tutton continued to be under Dr. Patterson's care. She saw him approximately one week after leaving the hospital and her temperature was 103°. She told Dr. Patterson that she was experiencing pain in her abdomen. Dr. Patterson took no X-rays at that or any subsequent time. Dr. Patterson saw her again at his office on May 25, June 15, 22, 29, July 2, and August 24, 1979. During this period of time, Ms. Tutton continued to complain of pain in her left side, had "spiking" temperatures and was losing weight at a startling rate. On her first office visit, May 18, she weighed 132 pounds. On August 24, 1979,

she weighed 103 pounds, a loss of 29 pounds in a period of only 98 days. In July, 1979, Ms. Tutton was hospitalized in Starkville, Mississippi, given two pints of blood and told that she had an infection on her left side. The symptoms which Ms. Tutton exhibited during this period of time —nausea, vomiting, abdomenal pain, temperature spikes and intestinal obstruction— were consistent with her having a foreign body in her abdomen.

On October 9, 1979, Ms. Tutton was examined by an obstetrician and gynecologist practicing in Starkville, Mississippi. During his examination of Ms. Tutton, he found a pelvic mass both in her pelvis and abdomen. Ms. Tutton was immediately hospitalized. An X-ray was taken, the first since her discharge from Saint Joseph Hospital on May 12, which revealed that she had a foreign body, "probably a sponge," in her abdomen. Ms. Tutton underwent abdominal surgery for the removal of the sponge on October 11, 1979. Due to the length of time that the surgical sponge had been left in her abdomen, it was necessary to remove a portion of her large and small intestines which had become adherent to the sponge and formed abcess cavities.

*Second and Third Theories of Liability*

■ There is sufficient evidence in the record to support the jury's verdict that Dr. Patterson committed malpractice in his post-operative care of Ms. Tutton. The trial court's charge in regard to the post-operative care count was error free. In regard to the post-operative care count, there is abundant expert testimony that Dr. Patterson failed to comply with the applicable standard of care.

There is also sufficient evidence in the record to support the jury's verdict that Dr. Patterson was negligent in leaving a sponge in Ms. Tutton's abdomen. Dr. Patterson testified that the laparotomy sponges had a loop to which a hemostat is hooked which is left outside the belly during the operation so that the incision will not be closed with the sponge remaining inside the patient. Dr. Patterson testified that this

was "part of my procedure" in a caesarean section operation and that he usually used them [hemostats] in this manner. Although Dr. Patterson testified that he thought he used one in the operation in controversy, the jury could infer otherwise. His failure to do so would violate a standard of care which the doctor established through his own testimony. Moreover, there was expert witness testimony that by leaving the sponge in the Plaintiff, Dr. Patterson deviated from the standard of care. The record does not contain any explanation as to why the sponge was left in the Plaintiff except that a caesarean section is a bloody operation, that Dr. Patterson looked for the sponge before closing the incision and that he relied upon the nurses' sponge count. Numerous cases have held that reliance on a sponge count does not, as a matter of law, relieve a doctor from liability for leaving a sponge in a patient. *Spears v. McKinnon*, 168 Ark. 357, 270 S.W. 524 (1925); *Armstrong v. Wallace*, 8 Cal.App.2d 429, 47 P.2d 740 (1935); *Rule v. Cheeseman*, 181 Kan. 957, 317 P.2d 472 (1957); *Barnett's Administrator v. Brand*, 165 Ky. 616, 177 S.W. 461 (1915); *Grant v. Touro Infirmary*, 254 La. 204, 223 So.2d 148 (1969); *Walker v. Holbrook*, 130 Minn. 106, 153 N.W. 305 (1915); *Rudeck v. Wright*, 709 P.2d 621 (Mont. 1985); *Stawicki v. Kelley* 113 N.J. Law 551, 174 A. 896 (1934); *Ault v. Hall*, 119 Ohio· St. 422, 164 N.E. 518 (1928); *Paro v. Carter*, 177 Wis. 121, 188 N.W. 68 (1922); *McCormick v. Jones*, 152 Wash. 508, 278 P. 181 (1929).

There is substantial evidence in the record from which the jury could have concluded that Dr. Patterson was negligent in leaving the sponge in the Plaintiff and deviated from the applicable standard of care in his post-operative care of the Plaintiff.

*First Theory of Liability*

■ As to Plaintiff's first theory, that Dr. Patterson was vicariously liable for the negligence of the hospital nurses, it was on this theory that the Court of Appeals found the trial court's charge to be confusing and

ambiguous. It should be noted that the Plaintiff sued Saint Joseph Hospital and settled her claim in this regard. Plaintiff signed a release which released all Saint Joseph employees from any and all claims "arising out of or resulting from any treatment, omission, event or act while Evelyn Tutton was a patient at Saint Joseph Hospital from May 5 through May 12, 1979, and during any other time Evelyn Tutton was a patient at Saint Joseph Hospital." Since the Saint Joseph nurses have been released from any liability owed to the Plaintiff, Dr. Patterson cannot be held vicariously liable for their conduct. *Stewart v. Craig,* 208 Tenn. 212, 344 S.W.2d 761 (1961); *Craven v. Lawson,* 534 S.W.2d 653 (Tenn.1976). However, it appears that this issue was not raised at trial.

 The Court of Appeals determined that the trial court's charge on the vicarious liability count was erroneous and vacated the judgment against Dr. Patterson and remanded the cause for a new trial without considering whether the error was harmless. We are of the opinion that the trial court's error, if any, was harmless error.

T.C.A. § 20–9–502 provides as follows:
> *Verdict applied to good account.* [sic]—If any counts in a declaration are good, a verdict for entire damages shall be applied to such good counts.

Tennessee courts have held on the basis of the above quoted statute that a trial court's erroneous instruction on one count of a multicount suit is harmless error if its instructions as to the other counts were proper. *Tennessee Cent. Ry. Co. v. Umenstetter,* 155 Tenn. 235, 237, 291 S.W. 452 (1927); *Bloodworth v. Stuart,* 221 Tenn. 567, 577, 428 S.W.2d 786 (1968). "[A] general verdict approved by the trial judge is not vitiated by the absence of proof on one or more

counts of the declaration if there is evidence to sustain the averments of a single count." *Alex v. Armstrong,* 215 Tenn. 276, 286, 385 S.W.2d 110 (1964); *Valentine v. Conchemco, Inc.,* 588 S.W.2d 871, 877 (Tenn.App.1979).

In *Bloodworth v. Stuart, supra,* plaintiff relied upon two separate theories; the attractive nuisance doctrine, and the playground doctrine. The trial judge in his charge submitted both theories to the jury. The jury returned a general verdict for plaintiff. On appeal, this Court found that the trial judge erred in not directing a verdict for the defendant on the attractive nuisance count. There was material evidence in the record from which the jury could conclude that the playground doctrine applied; thus applying T.C.A. § 20–9–502, this Court held that "[h]aving found the jury was justified in finding liability under the count of the declaration based on the playground doctrine, the verdict will be applied to that count." 221 Tenn. at 577, 428 S.W.2d 786. Justice Dyer, in his dissent, argued that an erroneous instruction in regard to a multiple count case can be reversible error even though proper instructions were given as to other counts being litigated. He concluded that the defendant was prejudiced by submission to the jury the attractive nuisance count.

In this case Defendant contends that the trial judge erred in submitting the vicarious liability count to the jury. We are of the opinion that the trial court's erroneous instruction in regard to this count is harmless error, having found that the jury was justified in finding the Defendant liable under either of the other two counts.[1] *Bloodworth v. Stuart, supra.* We cannot say that after "considering the whole record," the erroneous charge "more prob-

---

1. In this case Plaintiff requested the trial court to instruct the jury to return a special verdict as to each count. Counsel for Defendant replied: "I think it ought to be submitted on a general verdict regardless of how many theories [of negligence]." The Defendant objected and persuaded the trial court to instruct the jury to return a general verdict. Given the Defendant's objection to the submission of special interrogatories to the jury as to each count, it appears inappropriate that he should now claim that the court's instruction as to one count is reversible error because it is unknown which count the jury relied upon in returning a verdict for the Plaintiff.

ably than not affected the judgment." Rule 36(b), T.R.A.P.

### A Credit Against the Judgment

▰ As pointed out earlier in this opinion, prior to the beginning of trial, the Plaintiff released her claims against Saint Joseph Hospital in exchange for the payment of $40,000. After a judgment was rendered against Dr. Patterson in the amount of $78,498, Dr. Patterson moved the trial court to credit the $40,000 Saint Joseph settlement against the judgment. The trial court denied the motion, and the Court of Appeals failed to address this issue on appeal.

T.C.A. § 29–11–105(a) and (b) states that: (a) When a release or covenant not to sue or not to enforce judgment is given in good faith to one (1) or two (2) or more persons liable in tort for the same injury or the same wrongful death:

(1) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

(2) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

(b) No evidence of a release or covenant not to sue received by another tort-feasor or payment therefor may be introduced by a defendant at the trial of an action by a claimant for injury or wrongful death, but may be introduced upon motion after judgment to reduce a judgment by the amount stipulated by the release or the covenant or by the amount of the consideration paid for it, whichever is greater.

In the Court of Appeals the Plaintiff argued that Dr. Patterson was not entitled to a credit for the Saint Joseph Hospital settlement because there was evidence presented that indicated that any negligence of the hospital did not cause the same injury as was caused by the negligence of the Defendant. Accordingly, Plaintiff argues that the hospital and Dr. Patterson are not "liable in tort for the same injury." The pleadings indicate that Ms. Tutton sued Saint Joseph Hospital and Dr. Patterson for their concurrent negligence which resulted in the sponge being left in her abdomen. The fact that Dr. Patterson committed malpractice in his post-operative care of Ms. Tutton would not excuse Saint Joseph from being liable for the injuries which Plaintiff sustained. *See Rudeck v. Wright, supra.* Saint Joseph Hospital and Dr. Patterson were liable for the same injury sustained by the Plaintiff as a result of a sponge being left in her abdomen. Plaintiff is entitled to one recovery.

In this Court, Plaintiff candidly admits that if *Rosenbaum v. First American National Bank,* 690 S.W.2d 873 (Tenn.App. 1985), is the law, then the Defendant is entitled to a credit. In *Rosenbaum,* the Court of Appeals rejected the argument being asserted by Ms. Tutton in the case at bar. In *Rosenbaum,* plaintiff was shot by a robber while making a deposit at defendant Bank's night depository. Plaintiff sued the Bank, Murray Guard Company, which had a guard on the premises on the night of the shooting, and Earl Swenson Associates [ESA], the architects who designed the drive-through building which contained the night depository in question. Prior to trial, Plaintiff settled with Murray Guard Company and ESA for a total payment of $24,000. The case against the Bank was tried. A judgment was recovered against the Bank in the amount of $75,000 for Richard Rosenbaum and $15,000 for his wife.

Rosenbaum argued that the Bank was not entitled to a credit for the $24,000 settlement because the proof at trial demonstrated that the Bank alone was liable. Thus, Murray Guard and ESA were not "liable in tort for the same injury" as required by T.C.A. § 29–11–105.

After carefully reviewing various authorities, Judge Lewis, writing for the Court of

Appeals, rejected plaintiff Rosenbaum's argument, holding that:

In this case we do not think that plaintiffs Rosenbaum would seriously contend that Murray and ESA, out of the goodness of their hearts, made a gift of $24,000 to them. Murray and ESA paid $24,000 to the plaintiffs in order to 'buy their peace.' This $24,000 was paid because plaintiffs had sued Murray and ESA and alleged that both Murray's and ESA's negligence was a direct and proximate cause of the injuries which plaintiffs received as a result of the robbery and shooting of plaintiff Richard Rosenbaum.

To hold as plaintiffs would have us do would in most every case require a hearing as to the liability of the defendant to whom a covenant not to sue or release had been given. One of the purposes of Tenn.Code Ann. § 29–11–101 *et seq.* is to encourage extra-judicial settlements and promote judicial economy. The statute would be thwarted if we should adopt plaintiff's theory.

We are of the opinion that the test in a case such as this is whether the settling defendant was sued as a tortfeasor. If so, whether the defendant discharged by release or covenant not to sue is liable to the plaintiffs is immaterial. A judgment against the remaining defendant or defendants will be reduced by the amount paid by the defendant or defendants to whom the release or covenant not to sue is given.

690 S.W.2d at 878–879.

Other jurisdictions which have statutes identical to T.C.A. § 29–11–105 have similarly construed those statutes as allowing a credit for settlements of co-defendants who were sued as tort-feasors for the same injury without requiring proof of actual liability in tort. *See, Layne v. United States*, 460 F.2d 409 (9th Cir.1972); *Levi v. Montgomery*, 120 N.W.2d 383 (N.D.1963); *Degen v. Bayman*, 90 S.D. 400, 241 N.W.2d 703 (1976). "While there is authority to the contrary, most other jurisdictions which have considered the precise question have held that, even though the settling defend-

ant is later exonerated, the plaintiff is entitled to only one recovery, necessitating a credit against the judgment [for the settlement]." *Riexinger v. Ashton Co.*, 9 Ariz. App. 406, 453 P.2d 235 (1969).

*Rosenbaum* is the law in this State and Dr. Patterson is entitled to a credit for the Saint Joseph settlement against the judgment rendered in this cause. The trial court was in error in failing to grant Defendant's motion for a credit against the judgment.

The judgment entered in the trial court on behalf of the Plaintiff shall be reinstated and the Defendant, Dr. Patterson, shall be given a credit in the amount of the Saint Joseph Hospital settlement against that judgment, and the cause remanded to the trial court. The costs of this appeal shall be taxed equally between the parties.

BROCK, C.J., and FONES, HARBISON and COOPER, JJ., concur.