# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 9, 2010 Session

## LORRAINE DEUEL, Individually and as Administratrix of the ESTATE OF CLYDE DEUEL, deceased
### v.
## THE SURGICAL CLINIC, PLLC and RICHARD J. GEER, M.D.

**Appeal from the Circuit Court for Davidson County**
**No. 07C2368      Joe P. Binkley, Jr., Judge**

---

**No. M2009-01551-COA-R3-CV - Filed August 16, 2010**

---

This is a medical malpractice case involving *res ipsa loquitur*. The defendant physician performed surgery on the plaintiff's husband. Sponges were used in the patient's abdomen during the procedure. Nurses in the operating room counted the sponges used in the surgery. The nurses erred in counting the sponges, and the defendant physician closed the surgical incision with a sponge remaining inside. The retained sponge was later discovered and removed in a second surgery. The plaintiff's husband subsequently died of causes unrelated to the retained sponge. The widow sued the physician and his employer for medical malpractice, asserting that the doctrine of *res ipsa loquitur* applied, as well as the common knowledge exception to the requirement of expert medical proof. The physician filed a motion for summary judgment, and the plaintiff filed a cross-motion for summary judgment as to liability. The defendant physician filed two medical expert affidavits, both of which stated that the defendant physician had complied with the applicable standard of care by relying on the nurses' sponge count. Initially, the plaintiff filed an expert affidavit stating that the defendant physician did not comply with the applicable standard of care, but later filed a notice stating that she intended to proceed to trial with no expert proof to support her medical malpractice claim. The trial court determined that neither *res ipsa loquitur* nor the common knowledge exception applied, and granted summary judgment in favor of the defendant physician. The plaintiff now appeals. We reverse the grant of summary judgment in favor of the defendant physician, and affirm the denial of the plaintiff's motion for partial summary judgment. We find that, under both the common knowledge exception and the doctrine of *res ipsa loquitur,* the plaintiff was not required to submit expert proof to rebut the physician's expert testimony that he was not negligent by relying on the nurses' sponge count. However, application of neither *res ipsa loquitur* nor the common knowledge exception results in a conclusive presumption of negligence by the defendant physician. Therefore, a fact issue as to the physician's negligence remains for trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

H. Anthony Duncan, Nashville, Tennessee, for the appellant, Lorraine Deuel

C. J. Gideon, Jr. and Kimberly G. Silvus, Nashville, Tennessee, for the appellees, The Surgical Clinic, PLLC and Richard J. Geer, M.D.

## OPINION

### FACTS AND PROCEDURAL HISTORY

In July 2006, Clyde Deuel ("Mr. Deuel") was diagnosed with pancreatic cancer when an endoscopic ultrasound revealed a tumor in his pancreas. The testing also showed two enlarged lymph nodes that appeared to be benign. Mr. Deuel's diagnosing physician then referred Mr. Deuel for surgery to remove the pancreatic mass. To that end, Mr. Deuel saw Defendant/Appellee Richard J. Geer, M.D. ("Dr. Geer"). Dr. Geer is a member and employee of Defendant/Appellee The Surgical Clinic, PLLC ("The Surgical Clinic" or "the Clinic").

On August 22, 2006, Dr. Geer performed surgery on Mr. Deuel at St. Thomas Hospital ("St. Thomas") in Davidson County, Tennessee to remove the cancerous portion of Mr. Deuel's pancreas. During the surgery, those assisting Dr. Geer included circulating nurse Richard Staats ("Nurse Staats") and scrub nurse Linda Miller ("Nurse Miller") (collectively, "the Nurses"). Both Nurses were employed by St. Thomas.

During Mr. Deuel's surgery, laparotomy sponges were placed in his abdomen; the sponges were to be removed before the incision was closed. Before Dr. Geer closed Mr. Deuel's surgical incision, Nurse Staats and Nurse Miller each counted the surgical sponges twice to verify that all sponges used during the operation had been removed. After the count, the Nurses told Dr. Geer that all sponges had been removed. Accordingly, Dr. Geer closed the incision, completing the surgical procedure.

After that, Mr. Deuel remained at St. Thomas for about a week, recovering from the surgery. During this time, Mr. Deuel experienced no apparent complications from the surgery. On August 30, 2006, Mr. Deuel was discharged from St. Thomas.

On the morning of September 5, 2006, Mr. Deuel felt nauseous and began to vomit. He was taken to the Middle Tennessee Medical Center's emergency room, where an X-ray and CT scan were taken. The tests showed a foreign body lodged in Mr. Deuel's abdomen, resulting in a partial bowel obstruction. Later the same day, Mr. Deuel was transported to St. Thomas to be examined by Dr. Geer.

At St. Thomas, Dr. Geer reviewed Mr. Deuel's CT scan and determined that the foreign body in his abdomen was a laparotomy sponge retained from the surgery performed over two weeks earlier. That afternoon, Dr. Geer performed another surgery on Mr. Deuel to remove the retained laparotomy sponge from his abdomen. This second surgery lasted approximately thirty-seven minutes. Mr. Deuel remained at St. Thomas to recover from the surgery and was ultimately discharged on September 12, 2006.

At some point, one of Mr. Deuel's enlarged lymph nodes, that had previously appeared benign, tested positive for cancer. Mr. Deuel was treated by an oncologist, and underwent chemoradiation therapy. In January 2007, Mr. Deuel declined further chemotherapy. He finally succumbed to the cancer; on March 25, 2007, Mr. Deuel died.[1]

On August 21, 2007, Mr. Deuel's widow, Plaintiff/Appellant Lorraine Deuel ("Mrs. Deuel" or "Plaintiff") filed the instant medical malpractice lawsuit against Dr. Geer, The Surgical Clinic, and St. Thomas.[2] In the complaint, the Plaintiff invoked the doctrine of *res ipsa loquitur*. She contended that the Nurses negligently conducted an erroneous sponge count and that Dr. Geer negligently failed to confirm that all of the sponges in Mr. Deuel's abdomen had been removed prior to completing the August 2006 surgery. The complaint sought damages for Mr. Deuel's pain and suffering, mental anguish and loss of capacity to enjoy life, resulting from having to undergo the second surgery to remove the errant sponge, as well as Mrs. Deuel's loss of consortium.[3]

---

[1]In February 2007, Dr. Geer performed yet another surgery on Mr. Deuel, to address a small bowel obstruction caused by the spreading cancer. In her first and second amended complaints, the Plaintiff seeks recovery only for damages associated with the surgery to remove the retained sponge.

[2]Initially, the plaintiffs included Mr. Deuel's four adult children. However, the adult children were dropped as plaintiffs in the amended complaint. The first complaint also named as defendants Ascension Health - IS Inc., Ascension Health - IS Inc. d/b/a St. Thomas Health Services, St. Thomas Health Services, and St. Thomas Health Services d/b/a St. Thomas Hospital. On December 12, 2007, the trial court entered an order of voluntary dismissal as to these defendants.

[3]In the original complaint, the Plaintiff sought recovery for Mr. Deuel's lost wages, lost earning capacity, and medical bills incurred. The request for economic damages was dropped in the subsequent amended complaints.

St. Thomas answered the complaint and generally denied the allegations. In their answer to the complaint, Dr. Geer and The Surgical Clinic[4] admitted that a sponge was left in Mr. Deuel's abdomen and that surgeons remove sponges from the surgical field during surgery. Dr. Geer contended, however, that the retention of the sponge occurred "through no fault, negligence, or error" on his part. He asserted that it was customary to rely upon the Nurses' sponge count, and contended that he was not responsible for the retained sponge because the Nurses' sponge count had been erroneous. Dr. Geer also denied that the retained sponge was in his exclusive control. On these grounds, he denied liability and alternatively asserted comparative fault against St. Thomas.[5]

Discovery ensued. In the course of discovery, the deposition of Dr. Geer was taken. In his deposition, Dr. Geer described the use of laparotomy sponges during an operation. He said that the scrub nurse keeps the sponges, and when the surgeon needs a sponge, he asks the scrub nurse to provide one. The sponge is then placed in the operative site, usually by the surgeon but sometimes by the surgeon's assistant.

In February 2008, Dr. Geer filed a motion for summary judgment. In support of the motion, Dr. Geer filed his own affidavit. In the affidavit, Dr. Geer testified as to the recognized standard of care applicable to surgeons in Davidson County, Tennessee. During surgery, he said, the standard of care required the surgeon to focus on the complex task of removing the cancerous portions of the patient's organs, leaving the responsibility for accurate sponge, needle, and instrument counts with the circulating nurse and scrub nurse. Under the standard of care, the nurses would count the items twice and agree upon the results before the surgeon closes the surgical incision. Dr. Geer testified that he had complied with the applicable standard of care by successfully removing the cancer from Mr. Deuel's pancreas and waiting for the sponge count conducted by St. Thomas's nurses before closing the incision. Based on his affidavit, Dr. Geer argued that there were no genuine issues of material fact and that he was entitled to judgment as a matter of law.

The Plaintiff filed a response in opposition to Dr. Geer's motion for summary judgment. She maintained that it was unnecessary for her to submit expert proof to rebut Dr. Geer's affidavit because her claim fit within the common knowledge exception to the requirement of expert proof in medical malpractice cases. Nevertheless, she filed the affidavit of Ralph Silverman,

---

[4]Hereinafter in this Opinion, "Dr. Geer" or "the Defendants" may be inclusive of both Dr. Geer and The Surgical Clinic.

[5]Dr. Geer amended his answer on January 11, 2008. Dr. Geer filed an answer to the amended complaint on December 29, 2008. Dr. Geer amended his answer to the amended complaint on February 5, 2009. Later still, the Plaintiff filed a second amended complaint to which Dr. Geer filed an answer.

M.D. ("Dr. Silverman"), a colon surgeon whose practice was in St. Louis, Missouri.[6] The Plaintiff also filed the affidavits of Nurse Staats and Nurse Miller.

In his affidavit, Dr. Silverman testified that the applicable standard of care required that a laparotomy sponge not be unintentionally left in a patient following surgery. He said that the surgeon and the assisting nurses share responsibility for ensuring that no sponges are left inside a patient. He explained that the nurses are required to conduct a sponge count both before and after surgery, and the surgeon is required to perform a methodical search of the operative site in conjunction with the sponge count, prior to closing the surgery incision. Dr. Silverman opined that Dr. Geer's care of Mr. Deuel fell below the standard of care in that he did not perform an exploration of Mr. Deuel's abdomen prior to closing the surgical incision.

Nurse Staats and Nurse Miller filed similar affidavits, stating that St. Thomas's procedure required assisting nurses to count laparotomy sponges placed in and removed from the surgical patient's body. Both said that the surgeon does not supervise the nurses' sponge count, and "has the right to rely upon the nurses to give . . . an accurate count." They also said that Dr. Geer was responsible for actually removing the sponges during Mr. Deuel's surgery, and stated that they were "not aware of anything that states that it is the sole responsibility of the nurses to ensure that laparotomy sponges are removed from a surgical patient's body after surgery." Despite counting the sponges twice during Mr. Deuel's surgery, the Nurses admitted that they gave Dr. Geer an erroneous report that all sponges had been removed. They also said that they shared exclusive control of the sponges with Dr. Geer and two other St. Thomas employees present in the operating room.

While Dr. Greer's motion for summary judgment was pending, St. Thomas and the Plaintiff entered into a settlement agreement. As a result, St. Thomas filed pleadings in which it admitted "legal fault for all of the plaintiffs' damages." In July 2008, the trial court entered an agreed order of compromise and dismissal with prejudice as to St. Thomas.

After conducting a hearing on Dr. Geer's motion for summary judgment, the trial court entered an order on September 18, 2008 denying the motion. In the order, the trial court first found that "the common knowledge exception, or res ipsa loquitur, does not apply in this case." Reviewing the Nurses' affidavits and the Plaintiff's assertion that five people shared control of the retained sponge, the trial court found that Dr. Geer did not have exclusive control of the instrumentality that caused Mr. Deuel's injury, the sponge. The trial court stated that "[w]hile the Plaintiff notes that all of the persons who had control over the sponge were once or still are defendants in this case, this fact does not absolve the Plaintiff from the

---

[6]Mrs. Deuel later filed a revised version of Dr. Silverman's affidavit in support of her response to Dr. Geer's motion for summary judgment.

requirement that the instrumentality be under the remaining Defendants' exclusive control." On this basis, the trial court concluded that the doctrine of *res ipsa loquitur* did not apply.

Turning to the affidavits of Drs. Geer and Silverman, the trial court found that there was a material issue of fact as to whether Dr. Geer deviated from the applicable standard of care during Mr. Deuel's August 2006 surgery. Accordingly, the trial court denied Dr. Geer's motion for summary judgment.

Further discovery ensued. Dr. Geer served written discovery requests seeking information pertaining to the Plaintiff's settlement with St. Thomas. The Plaintiff objected on grounds of relevancy.

Dr. Geer then filed a motion to compel. In the motion, Dr. Geer argued that information pertaining to the settlement was relevant because, under Tennessee Code Annotated § 29-26-119, he was entitled to a credit in the amount of the settlement against any judgment rendered against him.[7] Dr. Geer also argued that the information was relevant because the Plaintiff was only entitled to recover once for her losses and because the information was admissible to show the bias or prejudice of witnesses. The Plaintiff maintained that under Tennessee's comparative fault principles, Dr. Geer was not entitled to a credit, and asserted that the settlement information was irrelevant.

After reviewing the settlement agreement *in camera*, the trial court ultimately denied Dr. Geer's motion to compel.[8] The trial court first found that a settlement payment by a co-

---

[7]Tennessee Code Annotated § 29-26-119 provides:

> In a malpractice action in which liability is admitted or established, the damages awarded may include (in addition to other elements of damages authorized by law) actual economic losses suffered by the claimant by reason of the personal injury including, but not limited to cost of reasonable and necessary medical care, rehabilitation services, and custodial care, loss of services and loss of earned income, but only to the extent that such costs are not paid or payable and such losses are not replaced, or indemnified in whole or in part, by insurance provided by an employer either governmental or private, by social security benefits, service benefit programs, unemployment benefits, or any other source except the assets of the claimant or of the members of the claimant's immediate family and insurance purchased in whole or in part, privately and individually.

T.C.A. § 29-26-119 (2000).

[8]In the initial December 5, 2008 order denying Dr. Geer's motion to compel, the trial court found that Tennessee's judicial adoption of modified comparative fault "implicitly overruled" Tennessee Code

(continued...)

defendant to a plaintiff is not included in the collateral sources covered by Section 29-26-119, and thus was not relevant to the determination of damages. The trial court also noted that, prior to trial, there was "no certainty that the Plaintiff will recover any monetary judgment against these Defendants." It was unpersuaded by Dr. Geer's double recovery argument because the settlement documents themselves did not specify "what amount applied to any of the Plaintiff's specified losses." Finally, it found that discovery of the precise terms of the settlement was not necessary to question the bias or prejudice of a witness because the existence of the settlement alone was sufficient. On these bases, the trial court denied Dr. Geer's motion to compel.

Thereafter, the Plaintiff filed a notice pursuant to Rule 30.02(6) of the Tennessee Rules of Civil Procedure[9] to depose a designated representative of The Surgical Clinic. In the notice, the Plaintiff requested the production of various documents, including continuing medical education materials, medical literature and documents created by the Clinic's malpractice carrier. In response, The Surgical Clinic filed a motion for a protective order. After a hearing, the trial court declined to issue a protective order.[10]

In the meantime, while the parties' discovery disputes were brewing, the Plaintiff filed a motion for partial summary judgment as to the liability of Dr. Geer. In the motion, the Plaintiff again argued that she was not required to present expert medical proof to support her malpractice claim against Dr. Geer because her claim fell within the common knowledge exception.

---

[8](...continued)
Annotated § 29-26-119. The trial court later altered its rationale for denying the motion to compel.

[9]Rule 30.02(6) provides:

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (6) does not preclude taking a deposition by any other procedure authorized in these rules.

TENN. R. CIV. P. 30.02(6).

[10]The trial court granted the motion for protective order only insofar as it pertained to the location and date of the deposition.

In response to the Plaintiff's motion for partial summary judgment, Dr. Geer filed the affidavit of a Missouri physician, David McCollister, M.D. ("Dr. McCollister"). In his affidavit, Dr. McCollister corroborated Dr. Geer's testimony pertaining to the standard of care. Under the applicable standard, he said, the surgeon is required to focus on the complex surgical task at hand and rely upon the assisting circulator nurse and scrub nurse to give him an accurate sponge count prior to completing the surgery and closing the incision. Dr. McCollister further stated that the standard of care did not require the surgeon "to execute a meticulous search of the abdominal cavity looking for sponges prior to completing the surgical case when the [operating room] staff reported to the surgeon that the sponge . . . count was correct not once, but twice." Because Dr. Geer had waited to close the incision until after he had received the Nurses' report that all sponges were accounted for, Dr. McCollister said that Dr. Geer had complied with the applicable standard of care in Mr. Deuel's August 2006 surgery. The trial court conducted a hearing on the Plaintiff's motion for partial summary judgment and took it under advisement.

Thereafter, the Plaintiff filed a notice stating that she intended to proceed to trial without an expert witness. Consequently, Dr. Geer filed a motion to reconsider and revise the entire order denying Dr. Geer's motion for summary judgment. Dr. Geer argued that the Plaintiff's withdrawal of Dr. Silverman's testimony meant that there was no longer any genuine issue of material fact precluding a grant of summary judgment in favor of Dr. Geer. The trial court held another hearing in light of the Plaintiff's notice that she intended to proceed to trial without any expert proof.

On July 31, 2008, the trial court entered separate written orders on each party's summary judgment motion. On the Plaintiff's motion for partial summary judgment on Dr. Geer's liability, the trial court denied the motion. In doing so, it noted that even if the common knowledge exception applied, the Plaintiff would still need expert proof to establish breach, damages and legal cause. On Dr. Geer's motion for summary judgment, the trial court found that the Plaintiff's notice "de-designating" Dr. Silverman as a witness, coupled with the trial court's prior conclusion that neither the common knowledge exception nor the doctrine of *res ipsa loquitur* was applicable, meant that there were no genuine issues of material fact and Dr. Geer was entitled to judgment as a matter of law. Accordingly, the trial court entered judgment for Dr. Geer and dismissed the Plaintiff's complaint.

The Plaintiff now appeals.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Plaintiff argues that the trial court erred in denying her motion for partial summary judgment as to Dr. Geer's liability, and in granting summary judgment in favor of Dr. Geer.

Dr. Geer argues that the trial court correctly granted summary judgment in his favor. However, in the event of an order remanding the case to the trial court, Dr. Geer argues that the trial court (1) abused its discretion in denying Dr. Geer discovery related to the settlement between the Plaintiff and St. Thomas; (2) abused its discretion in denying The Surgical Clinic's motion for a protective order as to the Plaintiff's Rule 30.02(6) notice of deposition; and (3) erred in reserving its ruling on Dr. Geer's motion for discretionary costs when Dr. Geer was the prevailing party in the trial court.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. The moving party has the burden of demonstrating that the requirements of Rule 56.04 have been met and may do so by "(1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008) (citing *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)). If the moving party makes the required showing, then the burden shifts to the nonmoving party "to produce evidence of specific facts establishing that genuine issues of material fact exist." *Id.* at 84 (citing *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). However, if the movant fails to make the required showing, the burden does not shift and the moving party's motion fails. *Id.* (citing *Byrd*, 847 S.W.2d at 215).

"[R]esolution of a motion for summary judgment is a matter of law." *Id.* (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004)). Thus, "we review the trial court's judgment de novo with no presumption of correctness." *Id.* (citing *Blair*, 130 S.W.3d at 763).

"Discovery disputes address themselves to a trial court's discretion." *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004) (citing *Benton v. Snyder*, 825 S.W.2d 409, 416 (Tenn. 1992); *Payne v. Ramsey*, 591 S.W.2d 434, 436 (Tenn. 1979); *Harrison v. Greeneville Ready-Mix, Inc.*, 417 S.W.2d 48, 52 (Tenn. 1967)). Thus, we review the trial court's denial of the motion to compel and the motion for a protective order under an abuse of discretion standard. *See id.* The trial court's decision regarding discretionary costs is

reviewed under an abuse of discretion standard as well. ***White v. Albritton***, No. W2000-03068-COA-R3-CV, 2001 WL 846061, at *2 (Tenn. Ct. App. July 26, 2001), *perm. app. denied* Dec. 17, 2001 (citing ***Placencia v. Placencia***, 3 S.W.3d 497, 503 (Tenn. Ct. App. 1999)). A trial court has abused its discretion when it "has applied an incorrect legal standard, has reached a decision that is illogical, has based its decision on a clearly erroneous assessment of the evidence, or has employed reasoning that causes an injustice to the complaining party." ***Johnson***, 146 S.W.3d at 604 (quoting ***Boyd v. Comdata Network, Inc.***, 88 S.W.3d 203, 211-12 (Tenn. Ct. App. 2002)).

## ANALYSIS

### Grant of Defendants' Summary Judgment Motion

The Plaintiff argues that the trial court erred in granting the Defendants' motion for summary judgment. She contends that both the common knowledge exception and the doctrine of *res ipsa loquitur* apply to her case, and consequently, she does not need expert proof to rebut the expert affidavits filed by the Defendants and to survive the Defendants' summary judgment motion. The Plaintiff cites ***Bowman v. Henard***, 547 S.W.2d 527 (Tenn. 1977), in support of her contention that affidavits of medical experts are not conclusive in common knowledge cases. The Plaintiff maintains that surgeons such as Dr. Geer have a non-delegable duty to remove foreign objects introduced into surgical patients, and cannot rely on a sponge count by a nurse.

In support, the Plaintiff cites Tennessee decisions that refer to cases in which a sponge is left in a surgical patient as a "classic example" of the common knowledge exception to the requirement of expert proof to establish the surgeon's negligence. ***See Seavers v. Methodist Med. Ctr. of Oak Ridge***, 9 S.W.3d 86, 92 (Tenn. 1999); ***McConkey v. State***, 128 S.W.3d 656, 660 (Tenn. Ct. App. 2003); ***Murphy v. Schwartz***, 739 S.W.2d 777, 778 (Tenn. Ct. App. 1986); ***German v. Nichopoulos***, 577 S.W.2d 197, 202-03 (Tenn. Ct. App. 1978) *overruled on other grounds by **Seavers***, 9 S.W.3d at 96. The Plaintiff argues that expert affidavits filed by a defendant do not negate an element of a plaintiff's medical malpractice claim in a common knowledge case, citing, *inter alia*, ***Tucker v. Metro. Gov't of Nashville and Davidson County***, 686 S.W.2d 87, 92-93 (Tenn. Ct. App. 1984); ***Ayers v. Rutherford Hosp., Inc.***, 689 S.W.2d 155, 160 (Tenn. Ct. App. 1984); ***Phelps v. Vanderbilt Univ.***, 520 S.W.2d 353, 357 (Tenn. Ct. App. 1974).

On the doctrine of *res ipsa loquitur*, the Plaintiff insists that it can be applied when control of the instrumentality causing the harm is shared by multiple persons, under the applicable Tennessee statute as well as caselaw. This is in part, the Plaintiff argues, because a surgeon such as Dr. Geer cannot delegate his duty to remove foreign objects from a patient's body

at the completion of surgery, citing the comment in *Tutton v. Patterson*, 714 S.W.2d 268 (Tenn. 1986), that "reliance on a sponge count does not, as a matter of law, relieve a doctor from liability for leaving a sponge in a patient." *Tutton*, 714 S.W.2d at 270.

In response, Dr. Geer maintains that the trial court correctly granted summary judgment in his favor, because neither the common knowledge exception nor the doctrine of *res ipsa loquitur* applies in this case. Dr. Geer maintains that the common law common knowledge exception to the expert proof requirement in medical malpractice actions applies only in limited cases in which the alleged negligence is unrelated to the instrumentality that caused the harm, citing *Runnells v. Rogers*, 596 S.W.2d 87, 89-90 (Tenn. 1980), and *Baldwin v. Knight*, 569 S.W.2d 450, 456 (Tenn. 1978). Dr. Geer distinguishes the *Tucker, Ayers*, and *Phelps* decisions cited by the Plaintiff, and cites *Murphy v. Schwartz*, 739 S.W.2d 777, 779 (Tenn. Ct. App. 1986), for the proposition that expert opinion evidence may not be refuted with lay opinion evidence.

As to the doctrine of *res ipsa loquitur*, Dr. Geer acknowledges that there was negligence, and that a sponge is not ordinarily left in a patient's body after surgery in the absence of negligence. The question, Dr. Geer argues, is which defendant was negligent, particularly in light of the fact that Nurses Staats and Miller concede that they were negligent in counting the surgical sponges. In light of the affidavits in the record, Dr. Geer asserts, the Plaintiff cannot show that the instrumentality causing the injury was under Dr. Geer's exclusive control when the injury occurred, and thus the doctrine of *res ipsa loquitur* cannot apply, citing *Seavers*, 9 S.W.3d at 91-92, and *Callins v. Baptist Mem'l Hosp. - Union City*, No. 02A01-9403-CV-00051, 1995 WL 48499 (Tenn. Ct. App. Feb. 7, 1995), *no perm. app.* Dr. Geer maintains that the doctrine of *res ipsa loquitur* does not apply when multiple persons could have control of the same instrument of harm at the time the injury occurred, and Tennessee does not impose on a surgeon a non-delegable duty to ensure removal of a foreign object from a surgery patient, in light of Tennessee's abolition of the "captain of the ship" doctrine, citing *Parker v. Vanderbilt Univ.*, 767 S.W.2d 412, 416 (Tenn. Ct. App. 1988). Dr. Geer contends that the trial court did not err in granting summary judgment because he submitted pertinent expert testimony that the Plaintiff failed to rebut.

The Plaintiff's claim for medical malpractice is governed by Tennessee Code Annotated § 29-26-115. *McConkey v. State*, 128 S.W.3d 656, 659 (Tenn. Ct. App. 2003). Subsection (a) of Section 29-26-115 sets forth the requirements for a plaintiff asserting a medical malpractice claim:

> In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

T.C.A. § 29-26-115(a) (2008 Supp.). Subsection (b) of this statute sets forth the requirements for expert testimony in medical malpractice cases. T.C.A. § 29-26-115(b) (2008 Supp.). Thus, in general, a medical malpractice plaintiff must submit expert proof showing the standard of care, that the defendant failed to act in accordance with the standard, and proximate cause.

In this case, the Plaintiff argues that she is not required to submit expert proof to establish her medical malpractice claim, by operation of the common law "common knowledge" exception, as well as the doctrine of *res ipsa loquitur*. We examine each in turn.

### *Common Knowledge*

Despite the breadth of the expert proof requirement in Section 29-26-115(a) and (b), the Tennessee Supreme Court has stated clearly that "there remains a common-knowledge exception to the requirement of expert testimony." **Seavers**, 9 S.W.3d at 93 n.10 (citing **Baldwin v. Knight**, 569 S.W.2d 450, 456 (Tenn. 1978); **Keeton v. Maury County Hosp.**, 713 S.W.2d 314, 317 (Tenn. Ct. App. 1986)). Under the common knowledge exception, "expert testimony is unnecessary when the subject matter of the malpractice claim lies within the common knowledge of lay persons." **Id.** (citing **Baldwin**, 569 S.W.2d at 456; **Keeton**, 713 S.W.2d at 317). The common knowledge exception has been described as being applicable "when medical negligence is, so to speak, as plain as a fly floating in a bowl of buttermilk." **German v. Nichopoulos**, 577 S.W.2d 197, 202 (Tenn. Ct. App. 1978) *overruled on other grounds by Seavers*, 9 S.W.3d at 96. In a case in which the common knowledge exception is applicable, the trier of fact is "permitted to infer negligence based upon a common-sense understanding that [the plaintiff's] injuries do not ordinarily occur unless the attending physician or health-care provider was somehow negligent." **Seavers**, 9 S.W.3d at 92.

Dr. Geer argues on appeal that the common knowledge exception "applies only to factual circumstances where the alleged negligence is wholly unrelated to the instrumentality that caused the harm." We respectfully disagree. Neither the **Runnells** nor the **Baldwin** case, cited by Dr. Geer, contain language restricting application of the common knowledge

exception as Dr. Geer claims. *See Runnells v. Rogers*, 596 S.W.2d 87 (Tenn. 1980); *Baldwin v. Knight*, 569 S.W.2d 450 (Tenn. 1978). Dr. Geer has cited no case with similar facts, in Tennessee or otherwise, in which the common knowledge exception was found not applicable.

The common knowledge exception has been applied under similar facts by a federal court applying Tennessee law and by at least one state court in another jurisdiction. *See Carver v. United States*, Nos. 3:04-0234, 3:04-0991, 2005 WL 2230025, at *9-10 (M.D. Tenn. Aug. 30, 2005); *Breaux v. Thurston*, 888 So.2d 1208, 1217 (Ala. 2003). In these cases, each court found that summary judgment in favor of the defendant surgeon was not appropriate, despite expert testimony that the standard of care permitted the surgeon to rely on the nurses' count of sponges and surgical instruments. *Carver*, 2005 WL 2230025, at *9-10; *see Breaux*, 888 So.2d at 1217. This is consistent with statements by our Supreme Court, explaining that, "[i]n those cases wherein the acts . . . complained of are within the ken of the common layman, the affidavit of medical experts may be considered along with all other proof, but are not conclusive." *Bowman v. Henard*, 547 S.W.2d 527, 531(Tenn. 1977); *accord Seavers*, 9 S.W.3d at 92 (citing *Baldwin*, 569 S.W.2d at 456); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 226 n.11 (Tenn. Ct. App. 1999) (citing *Ayers v. Rutherford Hosp., Inc.*, 689 S.W.2d 155, 160 (Tenn. Ct. App. 1984)).

Under these circumstances, we reverse the trial court's holding that the common knowledge exception to the expert proof requirement is inapplicable in this case.

### *Res Ipsa Loquitur*

Under the doctrine of *res ipsa loquitur*, a plaintiff need not prove specific acts of negligence by the defendant in order to get his case to the jury. *Burton v. Warren Farmers Coop.*, 129 S.W.3d 513, 523 (Tenn. Ct. App. 2002) (citing *Summit Hill Assocs. v. Knoxville Utils. Bd.*, 667 S.W.2d 91, 96 (Tenn. Ct. App. 1983); *Parker v. Warren*, 503 S.W.2d 938, 942 (Tenn. Ct. App. 1973)). The elements usually required for application of the doctrine are:

> (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence;
> (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; [and]
> (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.

W. PAGE KEETON, PROSSER AND KEETON ON TORTS 244 (5th ed. 1984 & Supp. 1988); *see Seavers*, 9 S.W.3d at 91 ("The plaintiff must demonstrate that he or she was injured by an

instrumentality that was within the defendant's exclusive control and that the injury would not ordinarily have occurred in the absence of negligence.").

"[T]he doctrine of res ipsa loquitur is . . . a rule of circumstantial evidence, not a substantive rule of negligence law." KEETON, *supra*, at 244 (Supp. 1988); *accord Burton*, 129 S.W.3d at 525 ("Res ipsa loquitur is a rule of evidence, not a rule of law."). The doctrine is primarily used in jury trials to provide a framework to determine whether the plaintiff's evidence is sufficient to entitle him to get his case to the jury. *Burton*, 129 S.W.3d at 526 (citing *N. Memphis Sav. Bank v. Union Bridge & Constr. Co.*, 196 S.W. 492, 498 (Tenn. 1917); *Ford v. Roddy Mfg. Co.*, 448 S.W.2d 433, 437 (Tenn. Ct. App. 1969); *John Bouchard & Sons, Co. v. Keaton*, 9 Tenn. App. 467, 480 (1928)). Under the common law, if the requirements of *res ipsa loquitur* are met, it "permits, but does not compel, a jury to infer negligence from the circumstances of an injury." *Seavers*, 9 S.W.3d at 91 (citing *Poor Sisters of St. Francis v. Long*, 230 S.W.2d 659, 663 (Tenn. 1950); *Lewis v. Casenburg*, 7 S.W.2d 808, 811 (Tenn. 1928); *Armes v. Hulett*, 843 S.W.2d 427, 432 (Tenn. Ct. App. 1992)). Application of the doctrine allows an inference of negligence, but it does not "dispense with the plaintiff's burden of proof." *Id.* (citing *Summit Hill Assocs. v. Knoxville Utils. Bd.*, 667 S.W.2d 91, 96 (Tenn. Ct. App.1983); *Oliver v. Union Transfer Co.*, 71 S.W.2d 478, 480 (Tenn. Ct. App. 1934); 57B AM. JUR. 2D *Negligence* § 1920 (1989)).

For medical malpractice cases in Tennessee, the common law doctrine of *res ipsa loquitur* has been codified at Tennessee Code Annotated § 29-26-115(c), which provides:

> In a malpractice action as described in subsection (a), there shall be no presumption of negligence on the part of the defendant; provided, there shall be a rebuttable presumption that the defendant was negligent where it is shown by the proof that the instrumentality causing injury was in the defendant's (or defendants') exclusive control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence.

T.C.A. § 29-26-115(c) (2008 Supp.); *accord McConkey v. State*, 128 S.W.3d 656, 659 (Tenn. Ct. App. 2003). This is a statutory exception to the requirement of expert proof in medical malpractice cases; if the elements of subsection (c) are met, the expert proof requirement in subsection (b) does not apply.

We note that, while application of the common law doctrine of *res ipsa loquitur* appears to create a permissible inference of negligence for the jury,[11] the statutory codification for

---

[11]"Under Tennessee law, res ipsa loquitur is a form of circumstantial evidence that permits, but does not
(continued...)

medical malpractice cases in subsection (c) states clearly that, if the statutory requirements are met, there is a "rebuttable presumption" that the defendant was negligent. T.C.A. § 29-26-115(c) (2008 Supp.). It is unclear whether there is a practical difference in the effect of a permissible inference and a rebuttable presumption under the facts of this case.[12]

Under the traditional articulation of the doctrine of *res ipsa loquitur*, there was considerable overlap with the common knowledge exception, inasmuch as the *res ipsa loquitur* requirement that the injury be one which ordinarily does not occur in the absence of negligence was often phrased in terms of "common experience" or "ordinary experience." *See, e.g., Burton*, 129 S.W.3d at 523 ("Plaintiffs relying on res ipsa loquitur . . . may . . . base their case on the circumstances surrounding the injury if common experience indicates '(1) that the injury was probably the result of negligence . . . and (2) that it was probably the defendant who was the negligent person.' " (citations omitted)); KEETON, *supra*, at 244 ("[T]he event must be such that in the light of ordinary experience it gives rise to an inference that someone must have been negligent."); *see also Seavers*, 9 S.W.3d at 92 ("Claimants have been permitted to use res ipsa loquitur only in those cases where the proof is such that the jury can reasonably infer from common knowledge and experience that the defendant was negligent."). Indeed, one Tennessee court likened the common knowledge exception and *res ipsa loquitur* to "Siamese twins":

> It seems to us that the inference of negligence obtained by the application of *res ipsa* . . . and the common knowledge exception to the requirement of expert testimony . . . are just about Siamese twins in that both require that it be

---

[11](...continued)
compel, a jury to infer negligence from the circumstances of an injury." *Seavers*, 9 S.W.3d at 91 (citing *Poor Sisters of St. Francis*, 230 S.W.2d at 663; *Lewis*, 7 S.W.2d at 811; *Armes*, 843 S.W.2d at 432).

[12]In discussing the procedural effect of *res ipsa loquitur* doctrine, the *Second Restatement of Torts* states:

> In the ordinary case the great majority of the courts . . . treat res ipsa loquitur as creating nothing more than a permissible inference, which the jury may draw or refuse to draw, unless the facts are so compelling that no reasonable man could reject it. Some courts have tended in the past, and some few still tend, to give res ipsa loquitur the effect of a presumption, which requires a directed verdict for the plaintiff if the defendant offers no evidence to rebut it.

RESTATEMENT (SECOND) OF TORTS § 328D cmt. m (1965); *accord* KEETON, *supra*, at 258. Note, however, that the Tennessee Supreme Court's decision in *Seavers* refers to the doctrine of *res ipsa loquitur* raising an "inference" of negligence in medical malpractice cases, rather than a "rebuttable presumption" of negligence. *See Seavers*, 9 S.W.3d at 97 ("We merely hold that the res ipsa loquitur doctrine is available in medical malpractice cases to raise an inference of negligence . . . .").

evident to all, that is judicial notice be taken, that the injury complained of does not ordinarily occur absent negligence.

*Murphy v. Schwartz*, 739 S.W.2d 777, 778-79 (Tenn. Ct. App. 1986). Whatever the accuracy of that comment at the time it was made, in recent cases, more daylight has opened between the common knowledge exception and the doctrine of *res ipsa loquitur*. In particular, in *Seavers*, the Supreme Court held that the doctrine of *res ipsa loquitur* may be utilized in medical malpractice cases even if expert testimony is necessary to show that the injury does not ordinarily occur in the absence of negligence.[13] *Seavers*, 9 S.W.3d at 97.

In the case at bar, Dr. Geer does not contend that the Plaintiff is required to submit expert testimony to establish the first prong of the *res ipsa loquitur* requirements. He concedes that there was negligence in this case, and that a sponge is not ordinarily retained in the patient's body after surgery in the absence of negligence.

Instead, Dr. Geer focuses on the second prong of the *res ipsa loquitur* requirements, that is, whether "the instrumentality causing injury" was in Dr. Geer's "exclusive control." T.C.A. § 29-26-115(c) (2008 Supp.). In particular, Dr. Geer contends that multiple persons cannot be deemed to have "exclusive control" of the same instrumentality. Because the attending Nurses concede that they had exclusive control of the sponge count and that they performed the count negligently, and the Nurses were not employed by him, Dr. Geer argues that he cannot be deemed to have had exclusive control of the instrumentality and *res ipsa loquitur* should not be applied to the Plaintiff's claim against him.

Dr. Geer's contention that *res ipsa loquitur* cannot be applied where multiple persons may have shared control of the instrumentality is belied by the language in the statutory codification applicable in medical malpractice cases. Subsection (c) states expressly that a rebuttable presumption of negligence is raised where the proof shows "that the instrumentality causing injury was in the defendant's (*or defendants'*) exclusive control . . . ." T.C.A. § 29-26-115(c) (2008 Supp.) (emphasis added).

Moreover, Tennessee courts have cautioned against a literal reading of the "exclusive control" requirement. "The 'exclusive control' element of the res ipsa loquitur doctrine, if read too literally, is overly restrictive." *Burton*, 129 S.W.3d at 525. The "exclusive control" element serves the purpose of demonstrating that the causal negligence was probably the defendant's, *i.e.*, that the defendant is responsible for the plaintiff's injury. *See id.* Exclusive control is sufficient for this purpose but is not the only way to show the defendant's

---

[13]*Seavers* did not address whether a plaintiff who seeks to utilize *res ipsa loquitur* can utilize expert testimony to establish the exclusive control element.

responsibility for the injury; therefore, exclusive control is not indispensable to the application of *res ipsa loquitur*. *Id.* (citing *Coca Cola Bottling Works, Inc. v. Crow*, 291 S.W.2d 589, 591 (Tenn. 1956); *Coca-Cola Bottling Works v. Sullivan*, 158 S.W.2d 721, 725-26 (Tenn. 1942)).

A comment to Section 328D of the *Second Restatement of Torts*[14] explains the "exclusive control" element of *res ipsa loquitur* as follows:

> The plaintiff may sustain this burden of proof . . . [by] showing that the defendant is responsible for all reasonably probable causes to which the event can be attributed. Usually this is done by showing that a specific instrumentality which has caused the event . . . [was] under the exclusive control of the defendant. Thus, the responsibility of the defendant is proved by eliminating that of any other person.
>
> It is not, however, necessary to the inference that the defendant have such exclusive control; and exclusive control is merely one way of proving his responsibility. He may be responsible, and the inference may be drawn against him, where he shares the control with another . . . [or] where he is under a duty to the plaintiff which he cannot delegate to another . . . . [I]f it [the responsibility of the defendant] can be established otherwise, exclusive control is not essential to a res ipsa loquitur case.

RESTATEMENT (SECOND) OF TORTS § 328D cmt. g (1965). Section 328D is cited with approval in *Provident Life & Accident Ins. Co. v. Prof'l Cleaning Serv., Inc.*, 396 S.W.2d 351, 355 (Tenn. 1965), and *Burton v. Warren Farmers Corp.*, 129 S.W.3d 513, 526 (Tenn. Ct. App. 2002). The *Restatement* offers the following illustration to this comment:

> A undergoes an operation. B, the surgeon performing the operation, leaves it to C, a nurse, to count the sponges used in the course of it. B is under a legal duty to A to exercise reasonable care to supervise the conduct of C in this task. After the operation a sponge is left in A's abdomen. It can be inferred that this is due to the negligence of both B and C.

RESTATEMENT (SECOND) OF TORTS § 328D cmt. g, illus. 9 (1965).

Dr. Geer argues, however, that "[t]he negligence in this case was the failure of [Nurses] Jay Staats and Linda Miller to properly count the sponges they handed to Dr. Geer and then count

---

[14]Section 328D of the *Second Restatement of Torts* was relied upon by the *Seavers* Court in its discussion of *res ipsa loquitur*. *See Seavers*, 9 S.W.3d at 94-95.

the number of sponges that Dr. Geer returned to them." He maintains, then, that the circumstances "actually indicate the causal negligence was that of Jay Staats and Linda Miller, and *not* that of Dr. Geer." (emphasis in original). His position is buttressed by the affidavit of Dr. McCollister, in which Dr. McCollister asserts that, under the standard of care, the surgeon must focus on the complex surgical task at hand and rely upon the nurses to give him an accurate sponge count prior to closing the surgical incision.

In support of his position, Dr. Geer cites *Callins v. Baptist Mem'l Hosp. - Union City*, No. 02A01-9403-CV-00051, 1995 WL 48499 (Tenn. Ct. App. Feb. 7, 1995), *no perm. app.* In *Callins*, the Court addressed the exclusive control element of *res ipsa loquitur* in the context of the division of duties between a surgeon and surgical assistants. In *Callins*, the plaintiff patient underwent surgery at the defendant hospital for a hysterectomy, an anterior colporrhaphy and an excision of a mole on her back. *Callins*, 1995 WL 48499, at *1. The defendant surgeon was not an employee of the hospital. He performed the surgery with the assistance of the hospital employees. For the surgery, the patient was anesthetized and rendered unconscious. *Id.* at *2. During the surgery, the patient was repositioned by the hospital employees at the surgeon's direction to allow the surgeon to access different parts of the patient's body. When the patient awoke after the surgery was completed, she experienced severe pain in her neck and shoulder and was diagnosed later with "neuropathy of the long thoracic nerve." *Id.*

The plaintiff patient in *Callins* filed a medical malpractice lawsuit against the hospital and the surgeon, asserting the doctrine of *res ipsa loquitur*. During the jury trial, at the close of the patient's proof, the trial court held that *res ipsa loquitur* did not apply and directed a verdict in favor of the defendants. The plaintiff patient appealed.

In affirming the decision of the trial court, this Court found primarily that the plaintiff had not shown that any actions during the surgery had caused her injury, and thus had not established "the instrumentality causing injury." *Id.* at *4. In addition, it found that the plaintiff had not demonstrated that the injury-causing acts were within the surgeon's exclusive control. To the contrary, the undisputed testimony showed that "at all times during the surgery, [the patient] was positioned and repositioned by hospital personnel" and that the surgeon "had no control over the positioning of the body." *Id.* at *3. As such, the *Callins* Court concluded that the trial court did not err in holding that the doctrine of *res ipsa loquitur* did not apply.

In the instant case, Dr. Geer claims that, like the surgeon in *Callins*, he did not have responsibility for the instrumentality that caused the injury, which he identifies as the sponge count. Dr. Geer argues that he "should not be held accountable for Jay Staats' and Linda Miller's negligence."

We cannot accept Dr. Geer's argument that, in essence, the "instrumentality" that caused the injury was the sponge *count* rather than the sponge. *Callins* is readily distinguishable in that the evidence in that case showed that the defendant physician had *no* responsibility for the positioning of the body of the unconscious plaintiff. In the case at bar, it is undisputed that the surgical sponges were to be removed by Dr. Geer. Under these circumstances, the Plaintiff has shown the requisite elements for application of the doctrine of *res ipsa loquitur*.

### *Rebuttal of Res Ipsa Presumption*

Dr. Geer argues that any inference or presumption raised pursuant to the doctrine of *res ipsa loquitur* has been rebutted by the expert testimony he proffered in support of his summary judgment motion. Dr. Geer, of course, submitted his own affidavit, stating that the Nurses were solely responsible for the sponge count. In addition, Dr. Geer filed the affidavit of Dr. McCollister, who testified that, under the applicable standard of care, the surgeon must focus on the complex surgical task at hand and rely on the assisting nurses to give him an accurate sponge count. He asserted specifically that the surgeon is not required to search the abdominal cavity for sponges prior to closing the surgical incision if, as in this case, the Nurses reported twice that the sponge count was correct.

Dr. Geer argues that this testimony rebuts any inference or presumption of negligence under *res ipsa loquitur*, and the Plaintiff cannot get her case to the jury where, as here, she has served notice that she does not intend to submit expert testimony. Dr. Geer argues that the trial court therefore correctly granted his motion for summary judgment.

It is axiomatic that, "where expert testimony is required in medical malpractice cases, a defendant who refutes the plaintiff's allegations with expert testimony is entitled to summary judgment when the plaintiff produces no rebuttal proof by expert testimony." *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 98 (Tenn. 1999) (Order Denying Petition to Rehear); *accord Bowman v. Henard*, 547 S.W.2d 527, 531 (Tenn. 1977) ("[I]n those malpractice actions wherein expert medical testimony is required to establish negligence . . ., affidavits by medical doctors which clearly and completely refute plaintiff's contention afford a proper basis for dismissal of the action on summary judgment, in the absence of proper responsive proof by affidavit or otherwise.").

In a malpractice action based on a retained surgical sponge, is the surgeon entitled to summary judgment based on an expert affidavit stating that the surgeon was not negligent by relying on the nurses' sponge count, if the plaintiff submits no responsive expert proof? The parties have not cited a Tennessee case that squarely addresses this issue, and we have found none. However, at least one Tennessee court has cited, in *dicta*, a plethora of cases from other jurisdictions on this point. In *Tutton v. Patterson*, 714 S.W.2d 268 (Tenn. 1986),

the Court cited nearly a dozen cases holding that "reliance on a sponge count does not, as a matter of law, relieve a doctor from liability for leaving a sponge in a patient." *Id.* at 270 (citing *Spears v. McKinnon*, 270 S.W. 524 (Ark. 1925); *Armstrong v. Wallace*, 47 P.2d 740 (Cal. Dist. Ct. App. 1935); *Rule v. Cheeseman*, 317 P.2d 472 (Kan. 1957); *Barnett's Adm'r v. Brand*, 177 S.W. 461 (Kan. 1915); *Grant v. Touro Infirmary*, 223 So. 2d 148 (La. 1969); *Walker v. Holbrook*, 153 N.W. 305 (Minn. 1915); *Rudeck v. Wright*, 709 P.2d 621 (Mont. 1985); *Stawicki v. Kelley*, 174 A. 896 (N.J. 1934); *Ault v. Hall*, 164 N.E. 518 (Ohio 1928); *McCormick v. Jones*, 278 P. 181 (Wash. 1929); *Paro v. Carter*, 188 N.W. 68 (Wis. 1922)).

Courts in sister jurisdictions have addressed the issue in depth. For example, in *Coleman v. Rice*, 706 So.2d 696 (Miss. 1997), the defendant surgeon performed a hysterectomy on the plaintiff patient. A surgical sponge was left inside the patient. The retained sponge was removed in a subsequent operation. *Coleman*, 706 So.2d at 697.

The patient in *Coleman* sued the surgeon for negligently leaving the surgical sponge in her, relying on the doctrine of *res ipsa loquitur*. *Id.* The defendant surgeon filed a motion for summary judgment supported by affidavits from medical experts. In the affidavits, the experts said that the surgeon was not negligent because the nurses were responsible for keeping sponge counts and that such was a common practice. *Id.* at 699. In the absence of contrary proof from the plaintiff patient, the trial court granted summary judgment in favor of the surgeon. The plaintiff appealed, ultimately to the Supreme Court of Mississippi. *Id.* at 697.

In *Coleman*, the Mississippi Supreme Court first found that the case was appropriate for application of the doctrine of *res ipsa loquitur*. *Id.* at 698. It observed that *res ipsa loquitur* "may be applicable where authority is shared concerning the instrumentality in question." *Id.* The Court stated that when the requirements of *res ipsa loquitur* are met, "a rebuttable presumption of negligence is raised." *Id.*

After surveying the pertinent Mississippi case law, the Mississippi Supreme Court concluded that the surgeon's reliance on the nurses' sponge count alone was no defense. *Id.* at 699. The *Coleman* Court commented, however, that the surgeon could not be held negligent per se based only on the retention of the sponge. In reversing the grant of summary judgment, the Court summarized its holding as follows: "[W]hile responsibility for sponge counts may be delegated to support staff, liability cannot be. A surgeon leaving a sponge inside a patient is not negligent per se, but a presumption of negligence is raised, which the surgeon may attempt to rebut or explain." *Id.* Thus, the Court concluded that the surgeon was not entitled to summary judgment based on expert proof that his reliance upon a nurse's sponge count was in accordance with common practice, even where the plaintiff submitted no expert testimony in response.

-20-

The Supreme Court of Alabama issued a similar ruling in **Breaux v. Thurston**, 888 So.2d 1208 (Ala. 2003). In **Breaux**, the defendant surgeon performed a gastric bypass procedure on the plaintiff patient. **Breaux**, 888 So.2d at 1210. At the end of the procedure, the scrub nurse and circulating nurse performed an instrument count in accordance with the hospital's policies and procedures. **Id.** at 1211. While the nurses counted, the surgeon performed a visual inspection of the operative field and saw no evidence of a retained instrument. **Id.** at 1211-12. The nurses erroneously reported to the surgeon that all instruments had been removed. The surgeon then closed the surgical incision with a surgical clamp remaining in the patient's abdomen. **Id.** at 1212. A subsequent surgery was performed to remove the retained clamp.

The patient in **Breaux** then sued the surgeon for malpractice. The case proceeded to trial. The defendant surgeon testified that he acted in accordance with the standard of care, relying on receiving a correct sponge and instrument count from the two nurses. **Id.** at 1211-12. He also submitted the expert testimony of another surgeon to the same effect. Both said that a more extensive and aggressive search of the abdominal cavity by the surgeon would pose a substantial risk of disrupting the surgical connections or causing hemorrhaging, so relying on the nurses' count met the standard of care. **Id.** at 1218-19. The plaintiff submitted no expert proof. Ultimately, the jury returned a verdict for the patient. **Id.** at 1210. The surgeon appealed, arguing that the jury instructions erroneously stated that the nurses' responsibility for counting sponges and instruments was "an added precaution" and the surgeon's delegation of the task "does not by itself relieve the surgeon of his responsibility to remove" such objects. **Id.** at 1219-20.

On appeal, the Supreme Court of Alabama reviewed pertinent case law in detail and synthesized the holdings as follows:

> Although it is the responsibility of a surgeon to remove before closing the incision all foreign objects due to be removed, the critical issue to be put to the jury is whether the surgeon conformed to the standard of care in attempting to fulfill that responsibility. The presence of the retained object is prima facie evidence of negligence by the surgeon in carrying out that responsibility. The presence of the retained objected [sic] does not, however, establish negligence per se. Rather, it serves to shift the burden to the defendant surgeon to show that he or she was not negligent because he or she fully complied with the statutorily defined standard of care. The fact that the operating-room nurses responsible for counting objects before and after the surgery report a final "correct" count does not *in itself* relieve the surgeon of liability. Rather, for a jury question to be presented, there must be expert testimony establishing the medical standard of care for attempting to prevent the retention of foreign

objects in the body after surgery. To the extent that the surgeon relied on the nurses' counts, there must be expert testimony establishing that such a practice is within the standard of care. If, after the plaintiff offers prima facie evidence of negligence by a showing that a foreign object was retained in the body after surgery and the burden of proof shifts to the surgeon, the standard of care is clearly established by expert testimony and there is substantial evidence indicating that the surgeon complied with *all* components of that standard of care, a jury question is presented as to whether the surgeon was in fact negligent.

*Id.* at 1217 (emphasis in original). Thus, the **Breaux** Court, much like the **Coleman** Court, determined that the retention of a foreign object in a surgical patient is prima facie evidence of the surgeon's negligence. If the surgeon presents expert testimony that reliance on the nurses' sponge and instrument count is in accordance with the standard of care and that the surgeon complied with the standard of care, "a jury question is presented" as to the surgeon's negligence, and his reliance on a nurse's count does not, as a matter of law, absolve the surgeon from liability. *Accord Burke v. Wash. Hosp. Ctr.*, 475 F.2d 364, 365 (D.C. Cir. 1973) ("Appellee [surgeon] attempted to shift responsibility for the injury [retained sponge] by asserting the nurse's sponge count was reported (obviously erroneously) as in order. While this may be enough to support shared liability on the part of the nurse's employer, [the hospital], it does not relieve the operating and supervising surgeon of his responsibility."); *Chi Yun Ho v. Frye*, 880 N.E.2d 1192, 1200 (Ind. 2008) ("[A] surgeon may not escape his responsibility to remove sponges used during the surgery simply by delegating responsibility for tracking surgical sponges to attending nurses."); *Dolaway v. Urology Assocs. of Ne. N.Y.*, 897 N.Y.S.2d 776, 776 (N.Y. App. Div. 2010) (holding that *res ipsa loquitur* was applicable when guide-wire left in surgical patient and that the defendants' proffer of expert testimony opining that there was no negligence did not "disqualify [the] case from consideration under res ipsa loquitur" but would "merely raise[] alternative inferences to be evaluated by the jury in determining liability." (quoting *Kambat v. St. Francis Hosp.*, 89 N.Y.2d 489, 497 (N.Y. 1997))).

In discussing the procedural effect of the doctrine of *res ipsa loquitur*, the *Second Restatement of Torts* analyzes the effect of evidence from the defendant that the injury did not result from his negligence as follows:

When the defendant in turn offers evidence that the event was not due to his negligence, the inference which arises . . . is not necessarily overthrown. Although the defendant testifies that he has exercised all reasonable care, the conclusion may still be drawn, on the basis of ordinary human experience, that he has not. . . . Normally, therefore, a verdict cannot be directed for the

defendant in a res ipsa loquitur case, solely upon the basis of the defendant's evidence of his own due care.

* * * *

The inference arising from a res ipsa loquitur case may, however, be destroyed by sufficiently conclusive evidence that it is not in reality a res ipsa loquitur case. If the defendant produces evidence which is so conclusive as to leave no doubt . . . , he may be entitled to a directed verdict.

RESTATEMENT (SECOND) OF TORTS § 328D cmts. n, o (1965). This concept was discussed in *Nicholson v. Sisters of Charity*, 463 P.2d 861 (Or. 1970), in which a pin was left in the plaintiff's abdomen during surgery. The defendant surgeons asserted that it was the duty of the nurses, hospital employees, to take care of the pins. The *Nicholson* Court found the case appropriate for application of the doctrine of *res ipsa loquitur*. The defendant surgeons contended that they had refuted any inference of negligence under *res ipsa* by their testimony regarding the nurses' responsibility for the surgical pins. The Court stated:

The only way such an inference could have been fully refuted was to prove conclusively that the pin was put there in such a manner that the doctors should not have known about it or discovered it in the exercise of reasonable care. No such showing was made. Plaintiff was entitled to a jury determination.

*Id.* at 862-63 (citations omitted); *accord Rogers v. Duke*, 766 S.W.2d 547, 548-49 (Tex. App. 1989) (holding that defendant surgeon in retained sponge case entitled to summary judgment where he left operating room and transferred responsibility for completing operation to other surgeons).

Considering the above authorities, we must conclude that the Plaintiff was not required to submit expert testimony on Dr. Geer's negligence, in response to the expert testimony submitted by Dr. Geer, in order to present the issue to the jury. As stated succinctly in *Chi Yun Ho*: "The inference of breach of duty confronts medical opinion of no breach of duty. Justice thus requires a trial." *Chi Yun Ho*, 880 N.E.2d at 1199 (quoting *Burke v. Capello*, 520 N.E.2d 439, 442 (Ind. 1988)).

Dr. Geer contends that he is nevertheless entitled to summary judgment because the Plaintiff gave notice that she intended to proceed to trial with no expert proof and such proof would be required on the Plaintiff's injury and causation. Here, it is undisputed that the Plaintiff's decedent was required to undergo a second surgery to remove the errant sponge, and that this surgery was necessitated by the retention of the sponge in Dr. Geer's original surgery. Expert testimony is not required to establish this fact. While the trial court may ultimately find that the extent of the damages claimed by the Plaintiff are not supportable in the absence of

expert proof, at this juncture, the lack of expert testimony on the cause for the second surgery is not a basis for granting summary judgment to Dr. Geer.

Under these circumstances, we must respectfully reverse the trial court's grant of summary judgment in favor of Dr. Geer.

### Denial of Plaintiff's Summary Judgment Motion

The Plaintiff argues that the trial court erred in denying her motion for partial summary judgment on the issue of Dr. Geer's liability for the failure to remove the surgical sponge. The Plaintiff asserts that Dr. Geer had a non-delegable duty to the decedent to ensure that all foreign objects introduced into the decedent's body during surgery were removed, citing language to this effect at 70 C.J.S. *Physicians and Surgeons* § 99 (2005). The Plaintiff relies as well on *dicta* in the **Tutton** case quoted above, that "reliance on a sponge count does not, as a matter of law, relieve a doctor from liability for leaving a sponge in a patient." **Tutton v. Patterson**, 714 S.W.2d 268, 270 (Tenn. 1986).

We disagree. The fact that the Defendant is not entitled to summary judgment does not *ergo* mean that the Plaintiff is entitled to summary judgment.

The procedural effect of application of the doctrine of *res ipsa loquitur* is detailed in *Prosser and Keeton on Torts*:

> The inference of negligence to be drawn from the circumstances is left to the jury. They are permitted, but not compelled to find it. . . . [T]he burden of proof in most jurisdictions is not shifted to the defendant's shoulders, nor is any "burden" of introducing evidence usually cast upon the defendant, except in the very limited sense that if the defendant fails to do so, he runs the risk that the jury may very well find against him.

W. PAGE KEETON, PROSSER AND KEETON ON TORTS 258 (5th ed. 1984); *accord Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 91 (Tenn. 1999) (*Res ipsa loquitur* "permits, but does not compel, a jury to infer negligence. . ..."); *Burton v. Warren Farmers Coop.*, 129 S.W.3d 513, 527 (Tenn. Ct. App. 2002) ("The inferences permitted by the res ipsa loquitur doctrine are rebuttable. . . . It is the fact-finder's prerogative to weigh the evidence to determine whether the defendant has successfully rebutted the inferences." (citations omitted)); RESTATEMENT (SECOND) OF TORTS § 328D cmt. e (1965) ("This conclusion [of negligence] is not for the court to draw, or to refuse to draw, in any case where either conclusion is reasonable; . . . [the court] must still leave the question to the jury if reasonable men might do so.").

The Plaintiff argues that the *dicta* quoted above in **Tutton** mandates a grant of summary judgment in her favor. It does not. The **Tutton** Court states only that reliance on a nurse's sponge count does not mandate judgment in favor of the defendant surgeon; it does not discuss the converse, in *dicta* or otherwise. In addition, Dr. Geer rightly notes that Tennessee no longer recognizes the "captain of the ship" doctrine in this context. **Parker v. Vanderbilt Univ.**, 767 S.W.2d 415-16 (Tenn. Ct. App. 1988).

Moreover, courts in other jurisdictions that hold that a surgeon may not obtain summary judgment or a directed verdict based on expert testimony that reliance on a nurse's sponge count was not negligent, do not go on to hold that the plaintiff is entitled to judgment as a matter of law. **See, e.g., Breaux v. Thurston**, 888 So.2d 1208,1217 (Ala. 2003) (stating that if the plaintiff makes a prima facie showing of negligence by showing a foreign object retained in the body after surgery, and the surgeon presents expert testimony that he complied with the standard of care, then "a jury question is presented as to whether the surgeon was in fact negligent."); **Chi Yun Ho**, 880 N.E.2d at 1199 ("This is not to say that at this point justice requires a verdict for the plaintiff." (quoting **Burke**, 520 N.E.2d at 442)); **Coleman v. Rice**, 706 So.2d 696, 699 (Miss. 1997) ("A surgeon leaving a sponge inside a patient is not negligent per se, but a presumption of negligence is raised, which the surgeon may attempt to rebut or explain.").

Even under the language of Tennessee's medical malpractice statute, creating a "rebuttable presumption" of negligence where the elements of *res ipsa loquitur* are shown, we find that Dr. Geer has submitted sufficient evidence to rebut any such presumption.

Likewise, under the common knowledge exception, proof of a retained sponge, "in the absence of expert medical testimony presented by the plaintiff, constitutes only prima facie evidence of negligence on the part of the surgeon." **Breaux**, 888 So.2d at 1222. As with the inference raised under the common law doctrine of *res ipsa loquitur*, proof of such a retained sponge "permits, but does not compel, a jury to infer negligence." **Seavers**, 9 S.W.3d at 91; **accord Chi Yun Ho**, 880 N.E.2d at 1199 ("This is not to say that at this point justice requires a verdict for the plaintiff." (quoting **Burke**, 520 N.E.2d at 442)). The Plaintiff is entitled to present to the jury the issue of whether Dr. Geer was in fact negligent, no more and no less.

Therefore, the trial court's denial of the Plaintiff's motion for partial summary judgment is affirmed.

### Dr. Geer's Discovery Issues

In the event of remand, Dr. Geer challenges the trial court's decisions regarding two discovery matters: the denial of all discovery pertaining to the settlement agreement between

St. Thomas and the Plaintiff, as well as the denial of a protective order concerning discovery requests made in connection with the Plaintiff's Rule 30.02 deposition of The Surgical Clinic.

## *Discovery of Settlement Agreement*

Dr. Geer argues that the trial court abused its discretion in denying discovery of the settlement agreement. Citing *Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d 602 (Tenn. Ct. App. 2006), Dr. Geer asserts that he is entitled to discovery of any non-privileged information relevant to the subject matter involved. Relying on Rule 26.02(1) of the Tennessee Rules of Civil Procedure,[15] he contends that, even if the information is not admissible at trial, it is still discoverable if it appears reasonably calculated to lead to admissible evidence. Dr. Geer maintains that the trial court utilized the wrong legal standard in that it "approached the issue by evaluating the *admissibility* of any such evidence rather than the *discoverability* of the information." (emphasis in original). He claims that the settlement information is relevant because the settlement proceeds are a collateral source under Tennessee Code Annotated § 29-26-119, it bears upon whether the Plaintiff has been made whole, and it is admissible to show bias or prejudice of a witness.

On appeal, Dr. Geer makes the same three arguments regarding relevancy that he made in the trial court. First, he asserts that the information is relevant because, under Tennessee Code Annotated § 29-26-119, the Plaintiff's damages should be reduced by the amount of the settlement. Section 29-26-119 provides that a medical malpractice claimant is entitled to actual economic losses,

> but only to the extent that such costs are not paid or payable and such losses are not replaced, or indemnified in whole or in part, by insurance provided by

---

[15]Rule 26.02 provides in pertinent part:

> **(1) In General.** Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things, and electronically stored information, i.e. information that is stored in an electronic medium and is retrievable in perceivable form, and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

TENN. R. CIV. P. 26.02.

an employer either governmental or private, by social security benefits, service benefit programs, unemployment benefits, or any other source except the assets of the claimant or of the members of the claimant's immediate family and insurance purchased in whole or in part, privately and individually.

T.C.A. § 29-26-119 (2000). While the trial court apparently concluded that Dr. Geer was not entitled to such a credit under Section 29-26-119, it also indicated that it would revisit the issue if a judgment were entered against Dr. Geer:

Since there has not been a judgment entered against the Defendants and since liability is not admitted by these Defendants, there is no certainty that the Plaintiff will recover any monetary judgment against these Defendants. If the Plaintiff is successful in obtaining a judgment against these Defendants, then any previously paid amounts might become relevant.

As the trial court indicated that its ruling on this issue was in effect provisional, to be taken up again if the Plaintiff obtained a judgment, we decline to give an advisory opinion on whether the Plaintiff's damages should be reduced under Section 29-26-119 by the amount of a settlement payment from St. Thomas.

Next, Dr. Geer contends that the settlement information is relevant because the information bears upon whether the Plaintiff has been made whole. After reviewing the settlement documents *in camera*, the trial court expressly found this argument unpersuasive because the trial court could not determine for which, if any, losses the settlement compensated the Plaintiff. Having carefully reviewed the record, we cannot say that the trial court "has applied an incorrect legal standard, has reached a decision that is illogical, has based its decision on a clearly erroneous assessment of the evidence, or has employed reasoning that causes an injustice to the complaining party." *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004) (quoting *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211-12 (Tenn. Ct. App. 2002)). Consequently, we find no abuse of the trial court's discretion in denying Dr. Geer's motion to compel on this basis.

Finally, Dr. Geer contends that the Tennessee Rules of Evidence permit introduction of the settlement information to establish bias or prejudice of witnesses. Without production of the settlement documents, Dr. Geer maintains that he can only assume that a settlement agreement exists based on the language of various pleadings and the trial court's order. In denying Dr. Geer's motion to compel, the trial court determined that Dr. Geer did not need the exact terms of the settlement agreement to establish bias or prejudice of a witness, that the mere existence of a settlement agreement was sufficient for that purpose. Based on our

review of the record, we cannot conclude that this ruling was an abuse of the trial court's discretion. Therefore, the trial court's denial of Dr. Geer's motion to compel is affirmed.

### *Protective Order*

Dr. Geer also argues that the trial court abused its discretion in denying the motion for a protective order concerning the Plaintiff's requests made in connection with the Rule 30.02(6) notice to depose The Surgical Clinic. Dr. Geer argues that the requests for any continuing medical education material "presented, shown, or given to *any* surgeon" employed by The Surgical Clinic and for any medical literature that The Surgical Clinic "possessed or had control over or had access to" are overbroad because Dr. Geer is the only Clinic employee who operated on the decedent. (emphasis in original). Dr. Geer also asserts that the Plaintiff's request for "any and all documents or tangible things" in The Surgical Clinic's possession that "were created, published, or generated" by The Surgical Clinic's malpractice carrier is overbroad in that it is not limited to the case at bar and potentially seeks information covered by the attorney client privilege. Finally, Dr. Geer argues that the Plaintiff's request for "any and all documents or tangible things" that The Surgical Clinic contends "support[s] any and all defenses" that The Surgical Clinic intends to present at trial seeks information protected by the work product doctrine.

In response, the Plaintiff argues that Dr. Geer failed to make the requisite showing of "good cause" for the issuance of a protective order. Citing **Duncan v. Duncan**, 789 S.W.2d 557, 561 (Tenn. Ct. App. 1990), she contends that Dr. Geer relied upon only insufficient "conclusory statements and generalizations" in support of the motion for a protective order.

Rule 26.03 provides that "for good cause shown" a trial court may enter an order denying discovery requests "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." TENN. R. CIV. P. 26.03. Discovery, however, is favored and the party seeking the order "must demonstrate with more than conclusory statements and generalizations that the discovery limitations being sought are necessary" for such protection. **Duncan**, 789 S.W.2d at 561 (citing TENN. R. CIV. P. 26.03; **Loveall v. Am. Honda Motor Co.**, 694 S.W.2d 937, 939 (Tenn. 1985)). In denying the motion for a protective order, the trial court implicitly concluded that Dr. Geer had not made the requisite good cause showing. On appeal, we review the trial court's decision for an abuse of discretion. **Loveall**, 694 S.W.2d at 939 (citing **Centurion Indus., Inc. v. Warren Steurer & Assocs.**, 665 F.2d 323, 326 (10th Cir. 1981)).

We note that the Plaintiff's document requests are indeed broad and could conceivably encompass documents that are privileged or constitute work product. However, Dr. Geer's objections are broad and generalized as well. The trial court's ruling on the request for a

protective order does not preclude Dr. Geer or The Surgical Clinic from objecting to the production of specific documents as irrelevant, privileged, or work product. Thus, we find no abuse of discretion.

### CONCLUSION

In sum, we reverse the grant of summary judgment to Dr. Geer. We affirm the trial court's denial of the Plaintiff's motion for partial summary judgment. We affirm the trial court's denial of Dr. Geer's motion to compel discovery of the settlement information and its denial of Dr. Geer's motion for a protective order. These holdings pretermit all other issues raised on appeal.

The decision of the trial court is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this Opinion. The costs of this appeal are taxed one-half to the Appellant Lorraine Deuel, individually and as administratrix of the Estate of Clyde Deuel, deceased, and her surety, and one-half to the Appellees The Surgical Clinic, PLLC, and Richard J. Geer, M.D.


_____
HOLLY M. KIRBY, JUDGE